# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

CARL EDWARD CORWIN,

               Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

               Defendant.

No.  C20-2003-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.     INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge.  *See* Doc. No. 16.  Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Carl Edward Corwin's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.  Corwin has filed timely objections (Doc. No. 17).  The Commissioner has not filed a response.

## II.     APPLICABLE STANDARDS

### A.     *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir.

2003).  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).  The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

2

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.    Review of Report and Recommendation**

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard.  *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").  As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

3

further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Corwin applied for SSI on March 31, 2017, based on major depression. Judge Roberts considered whether the ALJ committed reversible error by (A) failing to provide good reasons for challenging Corwin's credibility, (B) failing to provide good reasons for the weight afforded to a "probable other source opinion" and declining to remand for further development of this opinion and (C) failing to fairly and fully develop the record.

In evaluating the ALJ's assessment of Corwin's credibility, Judge Roberts first provided a thorough overview of Corwin's mental health treatment before and after spring 2018, when Corwin was hospitalized on five occasions for suicidal ideation. *See* Doc. 16 at 7-14. He then addressed Corwin's argument that the ALJ took some of Corwin's statements during this time out of context. These statements include: "because I can be a good actor," and that he did not trust/did not want to deal with a doctor when Corwin was reporting he had been discharged from Covenant Hospital a few days earlier. He also told a healthcare provider: "I have a tendency to not be honest about my symptoms." Doc. 16 at 16-17 (citing AR 17). Judge Roberts noted that the ALJ acknowledged Corwin's "several hospitalizations for suicidal ideation and attempts." Doc. 16 at 15 (citing AR 16). He found the record supported the ALJ's statement that Corwin's mental functioning was better when he was compliant with his medication. *Id.*

Judge Roberts then considered Corwin's argument that the ALJ's reference to the statement "I have a tendency to not be honest about my symptoms" did not take into account the whole statement, which was: "I have a tendency to not be honest about my symptoms. I want to start fresh and be honest now." Doc. 16 at 17 (citing AR 706). Corwin asserted this oversight was material because Corwin was stating he had not been

4

honest in the past (concerning his suicidal thoughts) but wanted to be honest about such thoughts going forward from January 2018. *Id.* (citing Doc. 12 at 4).

Judge Roberts found that even when adopting Corwin's interpretation of the statement, it would not change the ALJ's decision because it would prove, at most, that Corwin was actually having suicidal thoughts in November 2016 and March and May 2017, when he had denied such thoughts. Even though Corwin purportedly made false reports about his mental health during these visits, Judge Roberts noted the doctor's assessments showed that Corwin had a normal mental status examination with a bright mood in November 2016 and was experiencing situational stressors in March 2017 due to living alone and feeling unhappy and isolated. *Id.* (citing AR 328). Judge Roberts went on to summarize the same doctor's treatment notes in May 2017, which showed that even at Corwin's lowest point, his mental status examination did not note anything alarming and could have been the result of Corwin's failure to comply with medication.

Judge Roberts then addressed a healthcare provider's comment that Corwin was "very manipulative and gamey," which the ALJ cited in evaluating Corwin's credibility. Corwin argued that, in context, it was obvious that Corwin was having to work with insurance limits regarding his various hospital stays. Judge Roberts found the two interpretations were not mutually exclusive. Corwin could be subject to insurance limitations while still trying to "game" the system. Judge Roberts found the ALJ had merely reported facts in the record and that the missing context provided by Corwin did not necessitate reversal of the ALJ's conclusions. Doc. 16 at 18.

Finally, Judge Roberts addressed the statement from Corwin that he was discharged from Covenant Hospital because he could be a "good actor" and did not trust/did not want to deal with the doctor there. *Id.* Corwin argued that this statement was made during a time when he told providers at Covenant Hospital that he was not having thoughts of harming himself in order to be discharged when, in fact, he was having such thoughts. *Id.* Judge Roberts stated that regardless of Corwin's motivations, his statement and the fact that it earned him a discharge supported the ALJ's decision that

5

Corwin's "reported symptoms or impairments were not always an accurate reflection of his symptoms." *Id.* at 19 (citing AR 17). Judge Roberts noted that Corwin has never been diagnosed as being delusional and, because the record showed he had been manipulative and dishonest for various reasons during the relevant time period, the ALJ fairly took note of those facts in assessing Corwin's credibility. Notably, Judge Roberts observed that the ALJ did not completely disregard Corwin's subjective complaints based on this evidence, but merely found his credibility "less persuasive than might otherwise be the case if his veracity was not in question." *Id.* at 19 (citing AR 17).

Corwin also argued that the ALJ failed to consider (or demonstrate that he had considered) certain documents in the record in evaluating his credibility. One of those documents is an August 31, 2018, behavior treatment plan from Resources for Human Development (RHD) that was used to help Corwin find part-time employment that would fit his needs and help him with basic residential skills. Judge Roberts noted the ALJ is not required to cite every piece of evidence in the record and his failure to cite specific evidence does not indicate that such evidence was not considered. *Id.* at 20 (citing *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)). Judge Roberts also rejected an interpretation that this treatment plan suggested Corwin was incapable of performing full-time work, noting also that this was a decision reserved for the Commissioner.

The other documents are Patient Health Questionnaire (PHQ)-9 scores that Corwin argued confirmed he had severe depression when formally tested. *Id.* Judge Roberts found it a stretch to call these scores "formal testing" as they were based on questionnaires that Corwin completed at appointments. He also noted the information did not add anything new to the weight of the evidence because the ALJ had determined that Corwin's depression was a severe impairment. Further, again, the ALJ was not required to discuss every piece of evidence. *Id.* at 21.

Judge Roberts next considered the ALJ's evaluation of Corwin's daily activities in assessing his credibility. Corwin argued the ALJ faulted him for being homeless based on the activities Corwin engaged in (reading and using a computer at the library) when

6

he had to be away from the homeless shelter during the day and that the household tasks listed by the ALJ are consistent with his limitations and do not demonstrate an ability to perform full-time work. *Id.* at 21-22. Finally, Corwin suggested the ALJ appeared to use Corwin's interest in politics against him.

Judge Roberts rejected these arguments. He reasoned that Corwin's abilities to concentrate on reading all day, stay on the computer all day, follow election returns, watch television, do volunteer work and perform household tasks all indicated a command of certain skills that are needed in various workplace settings. Judge Roberts found no error in the ALJ's evaluation of Corwin's daily activities. Judge Roberts concluded the ALJ's credibility determination was supported by substantial evidence in the record. *Id.* at 22.

Next, Judge Roberts addressed the weight given to a "probable other source opinion" from RHD and whether remand was required for further development of the record as to this opinion. The opinion is a checkbox, fill-in-the-blank form dated April 9, 2019,[1] from an unknown source at RHD. *Id.* at 23 (citing AR 742-47). Judge Roberts summarized the form and noted the ALJ found it was "not persuasive," "not supported by or consistent with the record," was from an unknown source and contained "merely checked boxes with very little explanatory narrative and no citations to supportive laboratory findings." *Id.* at 23-24 (citing AR 20).

Corwin argued the ALJ failed to provide a sufficient explanation for the weight assigned to this opinion. Judge Roberts applied 20 C.F.R. § 416.920c in evaluating the ALJ's treatment of this opinion. He found the ALJ correctly noted the opinion does not identify the title or position of the author, nor does it indicate the author's relationship to Corwin other than the number of weekly meetings he or she had with Corwin. There is also no information regarding the author's level of schooling, area of expertise or level

---

[1] As the ALJ noted, there is some ambiguity as to the date on this form, but Judge Roberts gave it the most "claimant-friendly" reading. *See* Doc. 16 at 23, n.4.

of experience in his or her field. Judge Roberts concluded it was proper for the ALJ to discount the opinion based on this missing information. Judge Roberts then considered each of the factors under 20 C.F.R. § 416.920c and concluded none of them weighed in favor of giving the opinion more weight.

Judge Roberts next addressed Corwin's argument that the ALJ should have developed the record further as to this opinion, given the unknown identity of its author. Judge Roberts explained the legal standards governing the ALJ's duty to fully and fairly develop the record. He noted that the opinion was submitted prior to the administrative hearing and counsel could have clarified the author of the opinion at that time, or at least asked the ALJ to hold the record open so the identity of the author could be obtained. Judge Roberts reasoned a claimant cannot fault an ALJ for failure to develop the record when the claimant's counsel represents the record is fully submitted and does nothing to obtain the documents he now complains the ALJ should have obtained. *Id.* at 29. Judge Roberts further noted the record was consistent with the RFC such that Corwin was not prejudiced by any alleged lack of development of the record in this regard.

The final issue Judge Roberts addressed was whether the ALJ properly developed the record related to Corwin's mental and physical limitations. He rejected Corwin's argument that the ALJ should have obtained a further medical opinion on Corwin's mental limitations based on deterioration in Corwin's mental functioning in 2018 and the ALJ's rejection of the RHD opinion. *Id.* at 32. He explained it is not unusual for the administrative record to grow after the state agency consultants provide their opinions and that Corwin's most difficult months in early 2018 were not representative of his mental health during the entire relevant time period as explained in other parts of the R&R. *Id.*

Judge Roberts also considered *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020), which Corwin cited for the proposition that if the nonexamining agency consultant opinions are not useful in determining whether a claimant is disabled at the time of the hearing, the ALJ should remand for further development of the medical opinion evidence.

8

*Id.* at 33 (citing Doc. 12 at 14). Judge Roberts distinguished *Noerper*, noting that in that case, the "closest the record [came] to supporting" that the claimant could walk six hours a day was the report of the consulting physician who had not seen the majority of treatment records related to the claimant's knee impairment. *Id.* (citing *Noerper*, 964 F.3d at 747). The *Noerper* court held "the absence of evidence to suggest the accuracy or propriety of the 6-hour limitation [in the RFC] demonstrates that the ALJ did not fulfill the duty to fully develop the record." *Id.* Judge Roberts found there was not a similar absence of evidence here regarding Corwin's mental limitations.

Next, Judge Roberts considered Corwin's argument that the ALJ failed to fully develop the record because his PHQ-9 scores indicated additional treatment notes may have been missing from the record and that insurance issues may have impacted treatment. Judge Roberts disagreed on both fronts. With regard to potential missing records, he noted the ALJ is not required to further develop the record based on two stray references in separate treatment notes buried in the middle of an almost 800-page record. *Id.* at 34. He also noted that Corwin's counsel did not bring this to the attention of the ALJ and that an ALJ is not obligated to further develop a record unless the evidence is ambiguous or inadequate. *Id.* With regard to insurance issues, Judge Roberts observed that Corwin did not argue he was ever denied care or prescriptions as a result of his financial condition. He concluded there was no reason to search for such records when their absence did not appear to prejudice Corwin in any way and the record showed he had almost monthly contact with healthcare providers.

Judge Roberts next addressed Corwin's argument based on *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). *Nevland* requires remand when the record contains no medical evidence supporting the ALJ's decision and the ALJ relies solely on the opinion of a nontreating, nonexamining consulting physicians to craft the RFC. Judge Roberts concluded remand was not required on this basis because the ALJ adopted only some of the limitations identified by the state agency consultants and relied on other medical evidence in the record (such as treatment notes) to formulate the rest of the RFC.

9

Judge Roberts also considered development of the record with regard to Corwin's tremors. He noted the ALJ considered them to be a nonsevere impairment and that Corwin had not listed tremors as an impairment in his application. The state agency consultant reviewed the medical records on reconsideration (because there was no physical disability claim at the time of the initial application) and found no physical limitations. Corwin was sent for a consultative examination and the consultative examiner also did not find any functional limitations.

Judge Roberts observed that Corwin does not cite any evidence of ongoing issues with tremors even though he was receiving consistent medical care throughout the relevant time period. He noted the ALJ cited various treatment notes related to Corwin's tremors and that providers who evaluated Corwin in February 2019 and March 2019 (after Corwin received a brain stimulator implant for his tremors) did not find tremors. Judge Roberts concluded the ALJ's decision with regard to this impairment was supported by substantial evidence in the record as a whole. He reasoned that under *Noerper*, remand is not required every time there has been a substantial change in a claimant's medical condition after the state agency consultants write their opinions. Unlike the record in *Noerper*, Judge Roberts noted this record contains ample evidence, including from Corwin's surgeon and orthopedist, that his tremors have been managed since he had a brain stimulator implanted in February 2019. He thus found the record supported the physical limitations identified in the RFC.

Finally, with regard to his ability to work with his hands, Judge Roberts noted the RFC limits Corwin to frequent handling and fingering and that two of the jobs identified by the vocational expert (VE) are rated at the lowest levels in this area and limit fingering to "occasionally." Therefore, the RFC and the jobs identified by the VE accommodate limitations concerning fine motor movements. To the extent Corwin claims that panic attacks cause tremors in his legs, the ALJ included limitations consistent with Corwin's testimony to reduce triggers to those panic attacks.

For these reasons, Judge Roberts recommends affirming the decision of the ALJ.

10

## IV.  DISCUSSION

Corwin makes the following objections to the R&R:

- The ALJ did not provide good reasons for finding Corwin was not credibly reporting his mental limitations

- The ALJ did not fully and fairly develop the record concerning Corwin's limitations

- The ALJ erred by failing to provide a sufficient explanation for the weight afforded to the opinion of the probable other source opinion from RHD

Doc. 17.

### A.    *Corwin's Credibility in Reporting Mental Limitations*

Corwin relies on his principal briefing for this issue and argues that based on the nature of his mental impairments, it is inappropriate to rely on periods of stability in his mental health to conclude he has the ability to work.  Doc. 17 at 2 (citing *Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009)).  In his brief (Doc. 12 at 4), Corwin discusses multiple treatment notes the ALJ had cited in his credibility analysis.  These treatment notes contained statements from or about Corwin that, on their face, reflect poorly on his credibility.  Corwin highlights the context in which these statements were made, arguing the ALJ did not provide good reasons for finding Corwin was not credibly reporting his mental limitations.  Corwin also argues the ALJ failed to discuss records that were supportive of Corwin's claim, such as records from RHD and PHQ-9 results.  Finally, he argues the ALJ's assessment of his daily activities fails to appreciate the relevant context.

The Commissioner argues that Corwin is essentially requesting that the court reweigh the evidence in his favor, which the court is not permitted to do.  Doc. 13 at 5.  He states the ALJ considered Corwin's inpatient treatment but the ALJ also cited at least

11

25 normal mental status examinations from January 2017 to December 2018 and that Corwin had no hospitalizations from June 8, 2018 through May 5, 2019. *Id.* at 6-7.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

    (1)    the claimant's daily activities;

    (2)    the duration, intensity, and frequency of pain;

    (3)    the precipitating and aggravating factors;

    (4)    the dosage, effectiveness, and side effects of medication; and

    (5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); see also Social Security Ruling 16-3p.[2] The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis*, 353 F.3d at 647).

---

[2] The Eighth Circuit has acknowledged that Social Security Ruling 16-3p eliminated use of the term "credibility" and clarified that the evaluation of subjective symptoms is not an examination of an individual's character. *See Noerper*, 964 F.3d at 745, n.3. Rather, the review of subjective assertions is "an examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Id.* The Eighth Circuit notes this ruling largely changes terminology rather than the substantive analysis. *Id.* Because the parties refer to this section as the ALJ's "credibility" determination, I will do the same to avoid confusion.

The ALJ provided the following reasons for finding Corwin's subjective allegations not fully credible or consistent with the record:

- His mental examinations were often normal

- When he was compliant with prescribed treatment, he often reported feeling better mentally

- He was often inconsistent with following recommended therapy and counselling treatments

- His reported symptoms were not always an accurate reflection of his symptoms and some of his reported issues were inconsistent with the record as a whole (describing statements made by Corwin or providers related to him being dishonest, manipulative or "gamey")

- He did not note any physical limitations or impairments on disability application, function report or other preliminary documentation

- Objective medical imaging was generally within normal limits as were examination findings

- Physical treatments have been mostly conservative

- Despite impairments, has been able to maintain a fairly active lifestyle

AR 17-19. The ALJ acknowledged that Corwin has had several hospitalizations for suicidal ideation and attempts. He noted "[s]ome of the hospitalizations were voluntary admissions and others were not, or were the result of him demanding to be placed on involuntary hold." AR 16 (citing medical records).

Corwin focuses on the following paragraph of the ALJ's decision:

13

When the claimant was compliant with prescribed treatment, he often reported feeling better mentally. (Exhibits 2F/3; 10F/15; 14F/2; 15F/24, 31). The record indicates he was often inconsistent with following recommended therapy and counselling treatments. (Exhibits 7F; 10F/36; 12F). Additionally, the evidence indicates the claimant's reported symptoms or impairments were not always an accurate reflection of his symptoms and some of his reported issues were inconsistent with the record as a whole. One provider noted "He reports that he was discharged from Covenant Hospital a few days ago 'because I can be a good actor' and he did not trust/ did not want to deal with the doctor over there." (Exhibit 6F/26). Another stated "during his hospital stay, the patient was very manipulative and gamey. He wanted to stay in the hospital for a very long time…" due to issues with his roommate. (Exhibit 13F/9). At another point in the medical records, the claimant told a health-care provider, "I have a tendency to not be honest about my symptoms." (Exhibit 15F/5). Thus, the claimant's allegations, averments and testimony are found less persuasive than might otherwise be the case if his veracity was not in question.

AR 17. Corwin argues that "some variance and irrationality are expected from severe mental impairments," noting that Corwin was diagnosed with bipolar disorder and that periods of stability do not necessarily indicate an ability to work full-time. Doc. 17 at 2.

To begin, I have reviewed the record and agree with the chronology of Corwin's mental health treatment as summarized in the R&R. *See* Doc. 16 at 8-13. I find this context important in reviewing the nature of Corwin's mental impairment. The ALJ demonstrated that he considered Corwin's hospitalizations by referencing them in his decision. Corwin essentially disagrees with how the ALJ interpreted statements from him and his providers in light of this evidence. Corwin interprets such statements as a manifestation of his mental illness. The ALJ interpreted these statements as an indication that Corwin has not always been truthful about his symptoms, perhaps in an attempt to achieve some desired outcome.

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to reweigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.")

14

(citations and quotations omitted). I find the ALJ's interpretation of these statements is fair based on the record. *See* Doc. 16 at 9-12 (describing Corwin's various hospital stays and treatment notes). Moreover, this was only one of several reasons the ALJ provided for declining to give full weight to Corwin's subjective allegations.

Corwin also takes issue with the ALJ's failure to note and discuss records supportive of Corwin's claim. *See* Doc. 12 at 9. In reviewing the ALJ's credibility determination I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Specifically, Corwin cites to RHD records indicating he struggled with basic skills necessary to maintain a residence. These notes are from Corwin's initial meetings with RHD in October 2018. *See* AR 420. With the help of RHD, Corwin has been able to maintain a residence and a part-time job. AR 37-38. Corwin's use of social services does not require a finding of disability and the ALJ was not required to discuss every piece of evidence.

Corwin's arguments concerning the PHQ-9 scores, potential missing records and insurance difficulties also do not undermine the ALJ's credibility analysis. As to the PHQ-9 scores, Corwin argues these provide a formal diagnosis of severe depression. The ALJ identified Corwin's depression as a severe impairment. AR 12. To the extent Corwin argues these records should have alerted the ALJ to the possibility that there may be additional medication management and therapy records available,[3] I agree with Judge

---

[3] Corwin notes a one-line reference in a record dated September 5, 2018, that Corwin started seeing a new therapist at "1 tree." AR 528. The record contains a statement from Corwin's therapist at Hope Tree, which sums up Corwin's treatment over five sessions, beginning August 21, 2018. *See* AR 646.

Roberts that any fault concerning missing records does not lie entirely with the ALJ. As the claimant, Corwin has the initial burden of production. *See* 20 C.F.R. § 416.912(a) ("You must inform us about or submit all evidence known to you that relates to whether or not you are. . . disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). I also agree that the ALJ's duty to fully and fairly develop the record does not extend to catching these minute references, *see* AR 528-29, in an otherwise lengthy record. "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) (citing *Cox v. Apfel*, 160 F.3d 1203, 1209-10 (8th Cir. 1998)). The record contains sufficient evidence for the ALJ to make his determination without these additional notes, which may not even exist.

Corwin also argues that insurance difficulties may have impacted treatment and the ALJ should have developed the record on this topic. This is speculation and again, the responsibility to provide medical records does not lie entirely with the ALJ. Based on the record and hearing testimony, there was no reason for the ALJ to believe that significant medical records were missing.

Finally, Corwin takes issue with the ALJ's discussion of his daily activities, arguing that the ALJ did not consider the context of some of these activities. For instance, he notes that the stress of attempting to take care of his mother led to his becoming estranged from his family and homeless and that he spent the day at the library reading or being on the computer because he was required to be away from the homeless shelter during the day. Doc. 12 at 10. He also notes that it is not clear from the record whether he was required to volunteer at the homeless shelter and the ALJ did not consider Corwin's statement that volunteering was difficult for him because he would get "angry/emotional" and tended to "alienate people." *Id.* at 11 (citing AR 213, 216-17). Corwin also suggests the ALJ's comment about watching election results was

inappropriate. He contends the remainder of the tasks listed by the ALJ are not inconsistent with Corwin's reported limitations.

I find no error with respect to the ALJ's consideration of Corwin's daily activities. These activities are consistent with the limitations identified in the RFC and indicate Corwin is capable of certain activities that are also found in a work setting. While Corwin has pointed to evidence that could support a different outcome, I am not permitted to reverse "merely because substantial evidence also exists that would support a contrary outcome." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). Moreover, these daily activities were only one reason out of several for why the ALJ concluded Corwin was not as limited as alleged.

I have considered the record as a whole in determining whether the ALJ's reasons for assessing Corwin's credibility are supported by substantial evidence. I find that they are based on the reasons stated above and the reasons identified by Judge Roberts. As such, I defer to the ALJ's credibility determination. *See Guilliams*, 393 F.3d at 801 (explaining the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."). This objection is overruled.

**B.      *Development of the Record***

Corwin relies on his principal briefing with regard to this objection. Doc. 17 at 2. In his brief, Corwin argues that the state agency consultant opinions, for both his mental and physical impairments, were issued prior to a worsening of his mental symptoms in 2018 and prior to the implant of a deep brain stimulator in 2019 to control his tremors. Doc. 12 at 13. He contends that because he testified at the hearing that he was having ongoing issues with his tremors, the ALJ was obligated to obtain additional medical evidence to evaluate this impairment. Corwin compares his case to *Noerper*, arguing that when the state agency consultant opinions are outdated in determining whether a claimant is disabled at the time of the hearings, further medical opinion

17

development is required. *Id.* at 14. He contends the ALJ should have further developed the record to both his mental and physical impairments.

The obligation to obtain additional medical evidence comes from the ALJ's duty to develop the record. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010).

With regard to Corwin's mental impairments, the ALJ considered the opinions of the state agency consultants. He noted that on initial consideration, Dr. Dee Wright determined Corwin had only mental limitations and was limited to unskilled work.[4] AR 20. The ALJ found this was "not persuasive" because the denial of any physical impairments was not supported by or consistent with the record as a whole. *Id.* On reconsideration, the ALJ noted Dr. Jennifer Ryan determined Corwin was limited to unskilled work.[5] AR 20. The ALJ found this opinion "somewhat persuasive, as it is mostly supported by and consistent with the record. However, additional impairments and evidence from the hearing level indicate the claimant would have additional limitations." *Id.* The only other opinion evidence the ALJ discussed is the report from an unknown author at RHD. *Id.* The ALJ found this report "not persuasive" noting that it was "not supported by or consistent with the record," was from an "unknown source and dated potentially as of a future date" and consisted of "checked boxes with very little explanatory narrative and no citations to supportive laboratory findings."[6] *Id.*

_____

[4] Dr. Wright's opinion is dated May 24, 2017. AR 62-71.

[5] Dr. Ryan's opinion is dated August 9, 2017. AR 74-85.

[6] The ALJ's evaluation of this opinion will be discussed in greater detail in the following section.

The ALJ also discussed Corwin's mental health treatment. AR 16-17. He noted that Corwin had several hospitalizations for suicidal ideation and attempts. He also took note of normal mental status examinations, including times when he had logical and goal-oriented thought processes, fair insight and judgment, good memory and attention span and normal concentration. *Id.* He observed that when Corwin was compliant with prescribed treatment, he often reported feeling better mentally, but that he was often inconsistent with following recommended therapy and counselling treatments. *Id.*

I find the record was sufficiently developed as to Corwin's mental impairments. While the state agency consultants did not consider evidence related to Corwin's hospitalizations in spring 2018, the record consists of several treatment notes during and after this time that provide information on Corwin's mental limitations. The medical records from late 2018 and early 2019 indicate that Corwin was taking his medications and doing well mentally. *See* AR 646 (noting Corwin had a stable mindset as of August 21, 2018, was living on his own and working on obtaining a job as of September 2019); AR 725 (noting as of June 27, 2018, he was doing better on his medications, had not had suicidal thoughts, mood was better, he was no longer living with problematic roommate and was working with a job-development program); AR 729-30 (noting in August 2018 that Corwin was coping better than he had in the past when faced with a setback regarding housing, that he was going to get a job and that his medications were working well for him); AR 524 (denied depression, anxiety, suicidal ideation, homicidal ideation, feeling stressed on November 6, 2018); AR 492 (mood normal on December 17, 2018); AR 516 (reported he had been seeing psychiatrist and counselor and was feeling better mentally on January 8, 2019); AR 510-12 (denied depression, anxiety, suicidal ideation, homicidal ideation, feeling stressed on January 28, 2019); AR 466 (mental status was normal on February 13, 2019). The ALJ accounted for the fact that Corwin's symptoms had worsened since 2017 by finding that Corwin had additional limitations not identified by the state agency consultants. The mental limitations identified in the RFC are consistent with the medical evidence and Corwin's subjective allegations that are supported by the

19

evidence.  The ALJ was not obligated to obtain additional medical opinion evidence on Corwin's mental limitations based on this record.

With regard to Corwin's physical impairments, the ALJ considered the opinion of John May on reconsideration.[7]  AR 20.  Dr. May found no physical limitations.  The ALJ found this opinion "not persuasive" because it was not supported by or consistent with the record, which the ALJ found demonstrated Corwin was limited to a range of light work.  *Id.*  The ALJ also noted that Corwin was sent for a consultative examination, but the examiner did not provide a medical opinion.

The ALJ observed that Corwin did not report any significant physical limitations on his function report or other preliminary documentation.  AR 17.  On a more recent function report, he noted his conditions had no effect on his ability to perform exertional or postural movements.  *Id.*  The ALJ discussed the objective medical evidence, noting that testing was mostly normal except for some arthritis and spurring in his hip joints and right knee joint.  *Id.*  On examination, Corwin had some limited range of motion, a slightly antalgic gait and occasional positive straight leg testing results.  AR 18.  Otherwise, his examinations were mostly normal in terms of range of motion, normal strength, no motor deficit, no sensory deficit and intact coordination.  *Id.*  His hands were also normal, with normal grip strength, normal range of motion, no swelling and no tenderness.  *Id.*

The ALJ also noted that Corwin's physical treatments have mostly been conservative.  He discussed the deep brain simulator that was placed in January 2019 to help with Corwin's life-long tremors.  *Id.*  At a follow up appointment, his tremors had improved.  The ALJ pointed out that there were several medical records in which no tremors were observed or complained about.  One provider noted the tremors worsened with concentration.  The ALJ noted that Corwin's reports that he could not eat, use a cell

---

[7] Dr. May's opinion is dated October 9, 2017.  AR 74-79.

phone or play piano due to his tremors was inconsistent with the record and Corwin's self-reported activities. *Id.*

The ALJ then discussed Corwin's reports of pain, noting that he did not complete the recommended physical therapy sessions but, when he was compliant with prescribed treatment, he reported improvement in his symptoms. With regard to medical imaging, one provider noted that the arthritic changes would best be treated with weight loss, NSAIDs and daily exercise. Another provider remarked: "radiographic findings mild and do not explain his chronic pain." AR 19. Finally, despite Corwin's complaint that pain was the main reason he could not work, the ALJ noted that Corwin often denied pain during examinations and did not present in acute distress. *Id.* The ALJ found he was limited to a range of light work, without climb ladders ropes or scaffolds; only occasional crawling, kneeling, crouching or stooping; and frequent, but not constant, handling and fingering. *Id.*

I find the ALJ was not obligated to obtain additional medical opinion evidence on Corwin's physical limitations. "[S]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Nevland*, 204 F.3d at 858) (internal citation omitted). When describing limitations, an explicit reference to "work" is not always necessary as long as the ALJ can ascertain a claimant's functional limitations "with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment." *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007).

The medical records related to Corwin's physical impairments do not support a finding of disability. While the consultative examiner did not identify specific work-related limitations, his evaluation sufficiently describes Corwin's functional limitations (or lack thereof) as do other treatment records. The consultative examination was performed on September 19, 2017, and provided that Corwin had normal range of motion, full grip strength, normal finger opposition and that Corwin could make a full

21

fist with both hands. AR 343. Nonetheless, later records revealed that Corwin's tremor (prior to implantation of the stimulator) made it difficult for Corwin to perform certain movements. *See* AR 468-69 (noting moderate to marked abnormalities in some movements due to tremors).

After the stimulator was implanted, Corwin was pleased with his outcome, had no postural tremor with either hand and noted no side effects. AR 463, 466. Nonetheless, the ALJ accounted for Corwin's testimony that he still experiences some difficulties with fine manipulation by including an RFC limitation of frequent, but not constant handling and fingering. AR 15. With regard to other limitations, the consultative examiner found normal range of motion with respect to Corwin's hips, knees and ankles. AR 343. He also had a normal gait, normal squat, no difficulty getting up from the chair or on and off the examination table. AR 344. His straight leg test was negative and he had full motor function strength in all four extremities. AR 344. These findings are largely consistent with later findings in 2019, except for some limping in his gait and some knee pain.[8] *See* AR 390, 434, 509, 518, 560, 565, 574, 581, 633, 660.

While Corwin did report more significant pain to at least one provider in 2018, *see* AR 681, the medical records as a whole do not document consistent reports of pain that interfered with functioning. *See* AR 524, 531 (noting in September and November 2018, Corwin denied back pain, joint pain); AR 548 (complained of back pain, muscle aches and stiffness in May 2018); AR 538, 572 (complained of back pain, joint pain in March and August 2018); AR 580 (complained of back pain, joint pain and leg pain in February 2018); AR 431, 465 (complained of joint pain and stiffness, muscle pain and weakness, arm pain and weakness and leg pain and weakness in October 2018 and February 2019). Indeed, it appears that Corwin's pain improved with medication. *See* AR 529 (noting in September 2018 that Corwin reported his pain is doing very well with the ibuprofen and gabapentin); AR 537 ("He reports the ibuprofen and gabapentin

---

[8] This knee pain was attributed to an acute event of twisting his knee. AR 516.

combination is helping with his pain significantly."); AR 572 (noting "[p]atient reports the shot he had in his back really helped with his back and hip pain" in March 2018).

I find the record was sufficiently developed as to Corwin's physical limitations without the need to obtain additional opinions or other medical evidence. The ALJ took the limitations described in treatment records into account, as well as Corwin's credible allegations in formulating the RFC. Corwin's main complaint is that the ALJ did not sufficiently address his tremors. However, the ALJ's decision demonstrates he took this impairment into account as well as the relevant medical records. Corwin does not explain how additional medical evidence (to the extent there is any) would reveal more significant limitations than accounted for in the RFC.

Finally, I agree with Judge Roberts that *Noerper* does not require remand for further development of the record. In *Noerper*, the court took issue with the ALJ failing to explain how he translated his understanding of the claimant's physical symptoms into a conclusion that she could stand or walk for 6 hours of an 8-hour workday. *See Noerper*, 964 F.3d at 740. The court noted the closest the record came to supporting such a limitation predated the majority of treatment notes concerning the claimant's knee condition. *Id.* at 747. The ALJ had also failed to address conflicting medical opinions. *Id.* Here, Corwin claims that his suicidal ideation in 2018 and implantation of the brain stimulator required additional opinion evidence. However, he fails to explain why the RFC limitations are unsupported by the record as is or how the record was insufficiently developed to account for these issues. He also does not identify any RFC limitations that rely on outdated opinions or find no support in the medical evidence.

Based on my de novo review, I agree with Judge Roberts that the record contains sufficient medical evidence for the entire relevant time period to support the ALJ's RFC determination. This objection is overruled.

### C.     *Probable Other Source Opinion From RHD*

Corwin relies on his principal briefing as to this issue and makes additional arguments regarding alleged flaws in the R&R analysis.  Doc. 17 at 2-4.  He contends that, contrary to Judge Roberts' analysis, he should not be faulted for failing to verify the author of this opinion because it was not apparent that the ALJ would reject this opinion based, in part, on an illegible signature.  In other words, the fact that the ALJ asked counsel to confirm whether the record was complete did not alert counsel to the issue of whether the ALJ had difficulties determining who provided a particular opinion in the record.  *Id.*

Corwin compares the ALJ's failure to develop the record in this instance to that in *Snead* and *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).  Corwin adds that this was not harmless error because the RFC fails to account for any social functioning limitations, which were identified as "seriously limited" skills in the RHD opinion.  Finally, Corwin takes issue with the ALJ's reasoning that the opinion was potentially dated with a future date.  *See* AR 20 ("It is from an unknown source and dated potentially as of a future date (the date appears to be either April or November 2019.")).

The ALJ addressed this opinion as follows:

> Additionally, the claimant's representative provided a form to Resource for Human Development. (Exhibit 16F). The form was signed by someone without any indication of his/her qualifications or a printed/typed name. This person indicated the claimant had limited but satisfactory mental abilities and aptitudes related to unskilled work, some "seriously limited" mental abilities and aptitudes for semiskilled and skilled work, and some "seriously limited" mental abilities related to particular types of jobs. This person indicated the claimant has problems completing tasks, from a list of potential work-related demands, but did not circle any of the other issues listed. This report is not persuasive. It is not supported by or consistent with the record. It is from an unknown source and dated potentially as of a future date (the date appears to be either April or November 2019). It is predominantly merely checked boxes with very little explanatory narrative and no citations to supportive laboratory findings.

AR 20.  As noted in the R&R, Corwin's counsel subsequently determined this report was written by Jennifer Bradley, an advanced nurse practitioner (NP) with RHD.  Doc. 16 at 27 (citing Doc. 14 at 4).  Corwin offered this evidence to show prejudice, noting that if

Bradley was an NP at the time she authored the report, she would have been an acceptable medical source. *Id.* He contends this also would have alerted the ALJ as to missing medical records because the report indicates Bradley was seeing Corwin three times per week for "medication management and mental illness." *Id.*

An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen*, 612 F.3d at 1016. Outside of the ALJ's duty to fairly and fully develop the record, the claimant has the initial burden of producing evidence. *See* 20 C.F.R. § 416.912(a) ("You must inform us about or submit all evidence known to you that relates to whether or not you are. . . disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

The ALJ was not required to resolve the identity of the author of this opinion in order to find it not persuasive. The Eighth Circuit has recognized that similar vague, conclusory statements consisting of "checked boxes, circled answers, and brief fill-in-the-blank responses" that cite no medical evidence and provide little to no elaboration are of "little evidentiary value." *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). This is true regardless of whether the opinion comes from a treating source or other source. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996 ("[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements."). ALJs often reject treating physician opinions on this basis and courts have recognized it as a "good reason" for discounting such an opinion. *See Wildman*, 596 F.3d at 964 (concluding the ALJ properly discounted a treating physician opinion as conclusory when it consisted of three

25

checklist forms, cited no medical evidence and provided little to no elaboration). Even if the ALJ had learned the identity of this opinion's author, the ALJ provided other good reasons for not giving the opinion full weight.

I also disagree that Corwin's counsel is entirely blameless regarding clarification of the source of this opinion, or as to any missing records possibly linked to this opinion. The Notice of Hearing emphasizes the importance of reviewing the file for completeness and offers various methods for the attorney to review the file prior to the hearing. AR 133. Even if this issue would not have come to counsel's attention before the ALJ issued his decision, he could have clarified it before the Appeals Council. *See* AR 161 ("If you have additional evidence submit it with this request for review. If you need additional time to submit evidence or legal argument, you must request an extension of time in writing now . . . If you neither submit evidence or legal argument now nor within any extension of time the Appeals Council grants, the Appeals Council will take its action based on the evidence of record."). Corwin's counsel did not clarify this issue in his request for review to the Appeals Council or submit any new evidence from RHD. *See* AR 5; 162-63.

As noted above, the identity of the author of this opinion was not the only reason the ALJ found it "not persuasive." The ALJ considered the substance of that opinion in the context of the record as a whole, and found it was not supported by or consistent with the record. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (noting the ALJ is required to obtain additional evidence "only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled"); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (noting the ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped").

I also disagree that this opinion should have alerted the ALJ to the possibility that important records were missing and that the ALJ was obligated to obtain those records. At the hearing, the ALJ noted that counsel had filed a 10-day advanced notice in the case

and asked whether there were still records coming in. AR 30. Counsel stated: "Judge, to my knowledge, the record is complete." *Id.* Indeed, it appears that all of the outstanding medical records identified by counsel in correspondence to the ALJ on April 5, 2019, are in the record. AR 259-60. The record consists of some documents from RHD, suggesting that counsel already requested the relevant records. *See* AR 415-25. To the extent these records are incomplete, counsel is in the best position to follow up on that matter or to alert the ALJ, rather than the other way around. Moreover, Corwin's argument is based on speculation, which does not demonstrate prejudice. *See Haley*, 258 F.3d at 749-50 ("[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

Finally, I disagree that this case is like *Snead* or *Vossen*. In *Snead*, the court found the ALJ failed to develop the record based on a treating physician's report that the claimant could not work due to a heart condition. *Snead*, 360 F.3d at 839. The record consisted of no clinical findings that would undermine the treating physician's opinion. *Id.* In *Vossen*, the ALJ questioned the authenticity of the data and observations of the consultative examiner regarding the claimant's standing and sitting limitations. *Vossen*, 612 F.3d at 1016. The ALJ noted the second page of the consultative examiner's report was not signed and appeared to have been submitted after his original statement. *Id.* at 1014. Rather than clarifying this issue with the consultative examiner, the ALJ relied on the opinion of a non-treating, non-examining physician. *Id.* at 1016.

Here, the record consists of clinical findings that both support and contradict the extent of limitations identified RHD opinion. *See supra* Section IV(B) (discussing the medical evidence related to Corwin's mental limitations). The ALJ's discussion of the medical evidence demonstrates he found the weight of the evidence supported the type of limitations identified in the RHD opinion, but not to the full extent identified by the author. The RHD opinion identified "serious" limitations in understanding and remembering detailed instructions, setting realistic goals or making plans independently of others and dealing with stress of semiskilled and skilled work. AR 745. The ALJ's

27

RFC accounts for moderate limitations in these areas (as he found supported by the record as a whole). These limitations include simple, unskilled work tasks with no more than occasional simple work-related decisions, problem solving and use of independent judgment. AR 15.

The ALJ also included a limitation that Corwin may be off-task for up to five percent of the workday due to moderate limitation in the ability to maintain focus, attention and concentration. The RHD opinion also identified "serious" limitations in interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness and travel in unfamiliar places. AR 745. Contrary to Corwin's objection, the RFC does provide a limitation related to social interaction. The ALJ provided that Corwin could only occasionally interact with co-workers and the general public. AR 15. The ALJ sufficiently evaluated the RHD opinion based on the record as a whole. No further development was required.

Unlike *Vossen*, the ALJ did not question the authenticity of the RHD opinion. While the author was unknown and the ALJ commented about the possibility of it being dated as of a future date, he also found the opinion "not persuasive" because it was not supported by or consistent with the record and contained checked boxes with very little explanatory narrative and no citations to supportive laboratory findings. AR 20. In other words, the ALJ also rejected it based on its substance by finding it overstated Corwin's limitations based on the record. This objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1.      Plaintiff's objections (Doc. 17) to the Report and Recommendation (Doc. 16) are **overruled**.

2.      I **accept** the Report and Recommendation **without modification**. *See* 28 U.S.C. § 636(b)(1).

3.      Pursuant to Judge Roberts' recommendation:

a. The Commissioner's disability determination is **affirmed**; and

b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2021.

_____

Leonard T. Strand, Chief Judge